UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION


GARY N. AUBUCHON,               )
                                )
              Plaintiff,         )
                                )
v.                              )          Case No. 4:10CV02336 AGF
                                )
TIMOTHY GEITHNER, in his        )
capacity as Secretary of the Treasury,  )
                                )
              Defendant.         )

## MEMORANDUM AND ORDER

This employment discrimination action is before the Court on the motion of

Defendant Timothy Geithner, Secretary of the Treasury, for summary judgment. Plaintiff

Gary N. Aubuchon, a former revenue agent with the Internal Revenue Service ("IRS"),

brought the action under Title VII of the Civil Rights Act of 1964, claiming retaliatory

failure to promote (Count I), retaliatory hostile work environment (Count II), and

retaliatory constructive discharge (Count III). Defendant argues that most of Plaintiff's

claims should be dismissed for failure to file a timely administrative charge of

discrimination, and further that all the claims lack merit. For the reasons set forth below,

the motion for summary judgment shall be granted.

## BACKGROUND

For the purposes of the motion under consideration, the record establishes the

following. Plaintiff, a Caucasian male who was born on November 10, 1954, was hired

by the IRS as a revenue agent on October 9, 1979. From October 1, 2006, until he retired on December 3, 2009, he worked as International Examiner on the audit of a large multinational corporation, the "M case." The position was designated as a GS-13 grade pay position. Plaintiff's immediate supervisor from March 2007 until he retired was Ronald Webster.

On March 30, 2007, Plaintiff submitted an application in response to a vacancy announcement for a GS-14 Senior International Examiner position. The successful candidate was an African-American female. On April 18, 2007, Plaintiff filed a union grievance about how his application had been treated, and on December 13, 2007, he complained to an Equal Employment Opportunity ("EEO") counselor that he was discriminated against based on sex and race in the above promotion opportunity. Eventually, on October 16, 2008, Plaintiff filed a suit against the then Secretary of the Treasury based on this event.

Plaintiff asserts in the present action that after his December 13, 2007 complaint, Defendant retaliated against him by refusing Plaintiff's requests, beginning in August 2008, to upgrade the position Plaintiff held on the M case to a GS-14 position of Senior International Examiner, despite the facts that the position met the criteria for the upgrade and there were GS-14 positions available which could have been used for this purpose. Instead, the available GS-14 positions were assigned to other posts of duties throughout the country. Plaintiff does not dispute that had the position been upgraded to Senior International Examiner, he would have had to apply for it along with other applicants.

The record includes a copy of a letter from Webster to territory manager Nieves Narvaez dated August 25, 2008, stating Webster's belief that the M case was deserving of a GS-14 Senior International Examiner position, and complaining generally of the lack of GS-14 positions for International cases. (Doc. No. 30-4.) Webster testified by deposition that Narvaez told him that the request had been submitted up the chain of command. It is undisputed that no response was ever received, and, at least during Plaintiff's employment, the M Case was never designated for a GS-14 Senior International Examiner position.

Plaintiff also alleges that shortly after his December 13, 2007 EEO complaint, Defendant began to engage in a series of actions that collectively created a hostile work environment for Plaintiff. Plaintiff lists nine actions, the more serious of which include Webster telling Plaintiff that he (Plaintiff) was paying too much attention to a female co-worker, based on unverified information; Webster refusing to intervene in a complaint Plaintiff made concerning conduct of a co-worker until Plaintiff said that he would file a complaint against Webster for not intervening; Webster giving him unnecessarily short work deadlines and then criticizing him for not meeting them; and Webster including negative comments and omitting positive accomplishments in Plaintiff's performance reviews. Plaintiff alleges that this treatment by Webster was significantly different from his treatment prior to the EEO complaint. Plaintiff further asserts that on October 29, 2008, he complained to Narvaez about the hostile work environment and Webster's retaliation, but was ignored and rather his work was criticized, and shortly thereafter,

Webster and Narvaez together assigned Plaintiff extra work.

On September 18, 2008, Plaintiff contacted an EEO counselor complaining about the alleged retaliatory acts that underlie the present law suit (Doc. No. 39-4 at 3), and on November 17, 2008, he filed a written EEO retaliation complaint (Doc. No. 30-21). Plaintiff alleges in his present lawsuit that by late November 2008, he was being treated for medical conditions related to stress at work and that his working conditions were so intolerable that he felt forced to retire on December 3, 2009, earlier than he had planned to retire.

## ARGUMENTS OF THE PARTIES

Defendant argues that he is entitled to summary judgment with respect to Plaintiff's claim of retaliation based on the failure to upgrade the M case examiner's position to a GS-14 position, because Plaintiff did not file an EEO complaint with regard to this claim until more than two years after the alleged discriminatory event, which according to Defendant was October 1, 2006, the date Plaintiff was assigned the M case. Defendant also argues that as Plaintiff cannot name the person who made the decision not to upgrade the position, he cannot establish a prima facie case of retaliation, and further that this claim is without merit because there was no position to which Plaintiff or anyone else could have been promoted.

Defendant contends that Plaintiff also did not file a timely EEO complaint with respect to the retaliation claim based upon an alleged hostile work environment, and that none of the nine actions listed in the complaint, individually or in the aggregate, would

constitute a hostile work environment by any reasonable person.  Moreover, according to

Defendant, Plaintiff cannot establish a causal link between Webster (and Narvaez's)

alleged retaliatory actions and Plaintiff's protected activity, due to the passage of nine

months between Plaintiff's filing his union grievance on April 18, 2007, and the start of

the alleged retaliatory actions in January 2008.

As such, Defendant argues that Plaintiff failed to exhaust his administrative

remedies with respect to the retaliatory constructive discharge claim, and that in any

event, the claim fails on the merits because no reasonable person would have found

Plaintiff's working conditions intolerable.

Plaintiff responds that the retaliatory failure-to-upgrade claim did not accrue until

August 2008, when he actively began seeking the assignment of a Senior International

Examiner position for the M case.  He further argues that Narvaez was aware of

Plaintiff's December 2007 EEO charge, had the authority "to either create or lobby for" a

GS-14 position on the M case (Doc. No. 39-1 at 10), and has offered no explanation as to

why he never responded to Webster's letter of August 25, 2008.  These facts, according

to Plaintiff, establish a prima facie case of retaliation.

With respect to Defendant's argument that too much time elapsed between the

filing of the union grievance and the start of Webster's alleged retaliatory actions,

Plaintiff argues that his protected activity occurred on December 13, 2007, when he filed

the EEO complaint, not April 18, 2007, when he filed a union grievance.  Plaintiff

maintains that the nine actions he asserted in his complaint, as fleshed out in his sworn

Declaration (Doc. No. 39-4), taken together, were sufficient to create a hostile work environment and to constitute a constructive discharge.

Plaintiff acknowledges that he never filed an administrative complaint regarding his retaliatory constructive discharge claim. He asserts that this is of no import because at the time he was allegedly forced to retire, an active EEO investigation was in progress based on his November 17, 2008 EEO complaint. He argues that under these circumstances it would be unfair to apply the administrative filing requirements in a strict manner.

## **DISCUSSION**

### **Summary Judgment Standard**

"Summary judgment is proper if, after viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmovant, no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law." *Rynders v. Williams*, 650 F.3d 1188, 1194 (8th Cir. 2011) (citation omitted). When a motion for summary judgment is made and properly supported by evidence, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). Additionally, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. Summary judgment is proper when a plaintiff fails to establish a factual dispute on an essential element of [his] case." *Anda v. Wickes*

*Furniture Co.*, 517 F.3d 526, 531 (8th Cir. 2008) (citations omitted).

**Title VII Retaliation Claim**

Title VII prohibits employers -- including the federal government -- from retaliating against employees for engaging in activity that is protected under Title VII. 42 U.S.C. §§ 2000e-3(a) and 2000e-16(a). Because Plaintiff presented no direct evidence of retaliation, the Court applies the burden-shifting analysis established in *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 802-03 (1974). *See Jackson v. UPS, Inc.*, 643 F.3d 1081, 1087-88 (8th Cir. 2011). Plaintiff "first must demonstrate a prima facie case of retaliation to survive summary judgment." *See id* at 1088. To meet this burden, Plaintiff must show that (1) he engaged in a protected activity; (2) Defendant subsequently took an "adverse employment action" against him; and (3) there was a causal connection between the protected activity and the adverse employment action. *See id*.

The scope of Title VII's anti-retaliation provision is broader than Title VII's substantive anti-discrimination provisions. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006). Still, the anti-retaliation provision "protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Id*. The anti-retaliation provision contains a materiality requirement and an objective standard; thus, the provision requires showing that a reasonable employee would have found the employer's challenged action "materially adverse," i.e., that the challenged action "could well dissuade" a reasonable employee from protected conduct. *Id*. at 68-69.

7

In post-*Burlington Northern* decisions, the Eighth Circuit has

> consistently held that, to be materially adverse, retaliation cannot be trivial; it must produce some 'injury or harm.' Thus, [the Eighth Circuit has] concluded that commencing performance evaluations, or sending a critical letter that threatened 'appropriate disciplinary action,' or falsely reporting poor performance, or 'lack of mentoring and supervision' were actions that did not establish a prima facie case of retaliation, absent showings of materially adverse consequences to the employee.

*Littleton v. Pilot Travel Ctrs., LLC*, 568 F.3d 641, 644 (8th Cir. 2009) (citing cases).

A failure to promote is clearly an adverse employment action that can support a retaliation claim. *Watson v. O'Neill*, 365 F.3d 609, 613 (8th Cir. 2004). Here, however, Plaintiff does not claim that he was not promoted to an available position, but rather that a new GS-14 position was not created for the M case for which he could apply. Plaintiff asserts that had such a position been created, he would have been the successful applicant, but the Court believes this is too speculative to survive summary judgment. In *Moore v. Forrest City School District*, 524 F.3d 879 (8th Cir. 2008), the district court and Eighth Circuit were presented with a similar claim. In affirming the district court's grant of summary judgment to the employer school district, the Eighth Circuit explained as follows:

> [Plaintiff] argues that the School District took adverse action against her by not promoting her in August 2005. The district court found that there was no position available at that time. Because there was no promotional opportunity available to [Plaintiff] in August 2005, no reasonable employee would have found the School District's failure to promote her at that time to be materially adverse. Consequently, [Plaintiff] cannot demonstrate that she suffered an adverse employment action.

*Id*. at 885. Plaintiff has cited no cases, nor has the Court found any, in which the failure

to create a position for which the plaintiff could apply constituted an adverse employment action for purposes of a retaliation claim, or for that matter, for purposes of a stand-alone discrimination claim.

The Court concludes that Plaintiff has failed to defeat Defendant's motion for summary judgment with respect to Plaintiff's remaining allegations of retaliatory action, even considered collectively. Plaintiff has pointed to no statements or actions by Webster or other supervisors that were disciplinary in nature or that carried any penalties. The Eighth Circuit has affirmed the grant of summary judgment on an employee's retaliation claim where the alleged retaliatory acts were similar in nature to those alleged by Plaintiff here. *See Sutherland v. Mo. Dep't of Corrs.*, 580 F.3d 748, 752 (8th Cir. 2009) (holding that employee's reclassification from highly successful performance to lower performance rating three months after her filing a discrimination complaint against former supervisor was not a materially adverse retaliatory action, where employee had no subsequent reduction in salary, benefits, or prestige following her performance reclassification); *Lisdahl v. Mayo Found.*, 633 F.3d 712, 720-22 (8th Cir. 2011) (holding that evidence that supervisor denied the plaintiff vacation time and threatened him with a revised schedule designed to deny the use of earned vacation time; indirectly communicated threats to him through a subordinate regarding the plaintiff's job security after employee objected to any change in his established schedule; required the plaintiff, an assistant captain, to attend captain meetings; and ridiculed, ignored, and spoke angrily toward him in front of other employees did not rise to the level of actionable retaliation

where the plaintiff was not disciplined and did not experience any financial harm); *Recio v. Creighton Univ.*, 521 F.3d 934, 940 (8th Cir. 2008) (holding that a two-month delay between the time the plaintiff, a university professor, was notified of a vacancy compared with other faculty members, keeping the temperature in her office too cold, requiring her to acknowledge her probation in her employment contract, denying her the opportunity to participate in a certain study program, and not allowing her to maintain her preferred teaching schedule did not constitute adverse employment actions); *Gilbert v. Des Moines Area Cmty. Coll.*, 495 F.3d 906, 917 (8th Cir. 2007) (holding that college provost's receipt of a letter from the president of the college directing him to improve his performance, and assignment to an open cubicle near a security camera were not materially adverse employment actions).

Characterizing the complained-of actions as creating a hostile work environment and constructive discharge do not avail Plaintiff, because, as explained by the Supreme Court in *Burlington Northern*, 548 U.S. at 67, the standard for establishing a hostile work environment and constructive discharge are higher than for establishing an adverse employment action to support a retaliation claim. *See, e.g., Sanders v. Lee Cnty. Sch. Dist. No. 1*, 669 F.3d 888, 893 (8th Cir. 2012) ("To prove a constructive discharge under Title VII, an employee must show that the employer deliberately created intolerable working conditions with the intention of forcing her to quit."); *Tran v. Trs. of State Colls. in Colo.*, 355 F.3d 1263, 1270-71 (10th Cir. 2004) (recognizing that a plaintiff has a higher evidentiary burden when seeking to establish a constructive discharge than an

adverse employment action) (cited with approval in *Wilkie*, 638 F.3d at 954).

## Exhaustion of Administrative Remedies

In light of the above conclusions, the Court need not resolve the exhaustion issue raised by Defendant, but the Court will briefly address the matter. Federal employees who believe that they have been retaliated against "must initiate contact with [an EEO] Counselor within 45 days of the date of the matter alleged to be [retaliatory]." 29 C.F.R. § 1614.105(a)(1). Here, the 45-day period began on August 4, 2008, 45 days prior to September 18, 2008, when Plaintiff initiated contact with an EEO counselor. Thus, discrete retaliatory actions that took place prior to August 8, 2008, would be time barred. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002); *Wilkie v. Dep't of Health & Human Servs.*, 638 F.3d 944, 951 (8th Cir. 2011). But, a hostile work environment claim "will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." *Nat'l R.R. Passenger Corp.*, 536 F.3d at 122. Furthermore, courts may apply equitable doctrines that may toll the time period. *Id*. at 110.

The Court rejects Defendant's argument that Plaintiff's claim that the failure to assign the M case a GS-14 position was retaliatory arose on the day that Plaintiff was assigned to the M case. The Court believes that a fair reading of the record leads to the conclusion that this claim arose in August 2008, when Plaintiff began actively to seek the upgrade. Although somewhat doubtful, all of Plaintiff's other allegedly retaliatory actions could be viewed as part of one retaliatory scheme, such that all these actions,

even those that occurred prior to August 4, 2008, could be considered in determining whether Plaintiff sustained an adverse employment action. *See, e.g., Sandler v. Donley*, No. 4:11CV1119 CDP, 2012 WL 3155146, at *3 (E.D. Mo. Aug. 2, 2012).

As concluded above, however, even when considering all these alleged actions, the Court concludes that Plaintiff's retaliation claim is without merit, because he was not subjected to the type of materially adverse employment action that would deter a reasonable employee from engaging in protected activity.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's motion for summary judgment is **GRANTED**. (Doc. No. 33.)

A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 27th day of November, 2012.